UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

FILED
2011 NOV -7 PM 12:51
DISTRICT COURT
OF FLORIDA
FORT MYERS, FLORIDA

Original Case No.: 06-CR-66-FTM-99-SPC
Civil Case No. _____

JUDGE: _____

MAIKEN AGUILA,

v.

2: 11 -cv- 643 -FtM- 29SPC

UNITED STATES OF AMERICA,

    *Respondent.*

_____/

## MOTION TO VACATE JUDGMENT AND SENTENCE PURSUANT TO 28 USC §2255 or in the alternative WRIT OF ERROR CORAM NOBIS AND/OR AUDITA QUARELA PURSUANT TO 28 USC §1651

**COMES NOW** the Defendant, MAIKEN AGUILA, by and through his undersigned attorney, hereby files his Motion to Vacate Judgment and Sentence Pursuant to 28 USC § 2255 and the Sixth Amendment of the United States Constitution guaranteeing each criminal defendant a right to competent and effective assistance of counsel or in the alternative Writ of Error Coram Nobis pursuant to 28 USC §1651 and as grounds states the following:

### FACTUAL AND PROCEDURAL HISTORY

The Defendant is initially from Cuba and came to the United States of America in 1997. He obtained Legal Permanent Resident status. In 2006, the Defendant was arrested and federally charged for crimes relating to the possession of cannabis plants. The Defendant was represented by Counsel. Counsel was aware that the Defendant was NOT a citizen of the United States of America. Counsel encouraged the Defendant to plead guilty in the case. Counsel failed to explain to the Defendant that pleading guilty would cause him to have a conviction that would be considered an aggravated felony for immigration purposes and a conviction for which no waivers

or pardons are available under immigration law. The defendant relied on the advice of counsel and pled guilty. Counsel allowed the Defendant to believe that because he was Cuban he would not face immigration consequences. The Defendant travelled out of the Country and returned without incident with immigration. It was not until the Defendant travelled outside of the country, post-conviction for the second time, that he became informed that the conviction caused him to be deportable. In April, 2011, the Defendant's residency card was confiscated at the jail and he is awaiting a court date with immigration wherein he expects to be deported. He has no relief available under immigration law. Had the Defendant been advised by his attorney about the immigration consequences of his plea, he would have fought for the suppression of evidence, which he believed there was grounds for suppression, and would have exercised his right to a trial. This conviction is the sole basis of the defendant's deportability. But for this conviction, the Defendant would not be placed in deportation proceedings and would instead, be able to obtain citizenship in this Country.

## INEFFECTIVE ASSISTANCE OF COUNSEL

### TIMELINESS

According to 28 USC, Section 2255 all remedies on motion attacking sentence shall be filed no later than one year after the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review. 28 USCS, Section 1651 does not appear to have a time bar, but rather is treated as a remedy of last resort.

In the instant case, the Defendant's argument is based upon the fundamental constitutional sixth amendment right to be represented by effective and competent counsel and

the decision by the Supreme Court of the United States of America on March 31, 2010 in *Padilla v. Kentucky*, Supreme Court Opinion attached hereto. It is clear from the Supreme Court Opinion in *Padilla* that the intent is that their decision be retroactively applied as it discussed the concern of opening the "floodgates" at page 14-15 of the majority opinion. At page 15, the Court states that "It seems unlikely that our decision today will have a significant effect on those convictions already obtained as a result of plea bargains. For at least the past 15 years, professional norms have generally imposed an obligation on counsel to provide advice on deportation consequences of a client's plea. We should, therefore, presume that counsel satisfied their obligation to render competent advice at the time their clients considered pleading guilty." The language from the Supreme Court opinion quoted above indicates that if a defendant's counsel did not comport with "professional norms" and was not advised or was given erroneous advice by his attorney of deportation consequences, the opinion should be applied to them and they should be able to seek relief even if more than one year has elapsed since the judgment and sentence becoming final.

## LEGAL ARGUMENT

In *Padilla v. Kentucky*, Padilla was a resident of the United States for nearly 30 years and had participated on behalf of the United States in the Vietnam War. In 2004, Padilla was arrested and charged with trafficking in cannabis and was prosecuted federally for said offense. When deciding whether to plead guilty, Padilla's attorney advised Padilla that he need not worry about immigration consequences or deportation because he had been here so long that there was no way that he would be deported as a result of a conviction for trafficking in cannabis. Relying on counsel's erroneous advice, Padilla pled guilty. A review of the lower court opinion, *Padilla v. Kentucky*, 2006 Ky. App. LEXIS 98 makes it clear that the record from the date of the change

of plea indicated that Padilla was aware of the possibility that he could be deported. See page three of lower court opinion attached hereto. Despite the record being clear as to Padilla's awareness of possible deportation consequences, the Supreme Court found that Padilla's allegation that his attorney affirmatively misadvised him was not disputed by the record and Padilla was therefore entitled to have the case remanded to the trial court for an evidentiary hearing in regards to the prejudice prong of the analysis. At page 11 of the majority opinion of the Supreme Court of the United States of America, the Court discusses that when immigration law is unclear as to exactly what consequences will result from a guilty plea and/or conviction, "a criminal defense attorney need do nothing more than advise a non-citizen client that pending criminal charges may carry a risk of adverse immigration consequences." It explains further that when deportation consequences are clear, as they are in drug cases, the duty of a defense attorney to give correct advice regarding deportation is equally clear. The Supreme Court went on to state, "It is our responsibility under the Constitution to ensure that no criminal defendant— whether a citizen or not—is left to the 'mercies of incompetent counsel.' To satisfy this responsibility, we now hold that counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less." In addition, despite the Solicitor General urging the Supreme Court to limit their decision to affirmative mis-advice of counsel, the Supreme Court refused to limit their opinion to affirmative mis-advice stating that limiting the opinion to affirmative mis-advice would "invite two absurd results. First, it would give counsel an incentive to remain silent on matters of great importance, even when answers are readily available. Silence under those circumstances would be fundamentally at odds with the critical

obligation of counsel to advise the client of advantages and disadvantages of a plea agreement. When attorneys know their clients face possible exile from the country and separation from their families, they should not be encouraged to say nothing at all. Second, it would deny a class of clients least able to represent themselves the most rudimentary advice on deportation even when it is readily available." The Supreme Court further holds "it is quintessentially the duty of counsel to provide her clients with available advice about an issue like deportation and the failure to do so "clearly satisfies the first prong of the *Strickland* analysis."

In the instant case, defense counsel provided NO advice to the Defendant in regards to the absolute deportation consequences of his plea. It is clear under immigration law that a conviction for any drug offense is a deportable offense for which no waivers are available (unless it is possession of 30 grams or less of cannabis). It is an aggravated felony under immigration law which means certain deportation. Under the *Padilla* decision, it is clear that the Defendant's counsel was ineffective and incompetent because he gave no advice to the Defendant and failed to tell Mr. Castillo of the imminent deportation he was facing due to the conviction. The Defendant relied on the advice rendered by counsel that was devoid of any conversation regarding immigration and entered a change of plea. The Defendant was entitled to a clear warning regarding immigration consequences from HIS ATTORNEY. Had the Defendant had that warning, he would not have entered into the plea bargain. But for this Conviction, the defendant would not be deportable. The Defendant is suffering immigration consequences due to the lack of advice by counsel. His residency card was detained by immigration at the airport and he is awaiting his inevitable deportation. Therefore, under *Padilla v. Kentucky* the Defendant is entitled to relief and should be allowed to vacate the judgment and sentence.

WHEREFORE, the Defendant respectfully requests that this Honorable Court vacate the Judgment and Sentence and allow the Defendant to recommence plea negotiations and/or set his case for trial.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered via CM/ECF to the Clerk of Courts and mailed to the United States Attorney's Office at 2110 First Street, Fort Myers, FL 32902 this 1st day of November, 2011..

CORONA LAW FIRM, P.A.
3899 NW 7th Street, 2nd Floor
Miami, Florida 33126
Telephone: (305) 266-1150


By: /s/ Ricardo Corona
    RICARDO R. CORONA/ Nina Tarafa
    Attorney for Defendant
    Florida Bar No: 111333/ 121-78

AFFIDAVIT IN SUPPORT OF MOTION TO VACATE JUDGMENT AND SENTENCE IN CASE NUMBER 06-CR-66-Ftm 99 spc , United States District Court, Middle District of Florida

STATE OF FLORIDA

COUNTY OF MIAMI-DADE

1. Before me, the undersigned authority, personally appeared Maiken Aguila who, being by me first duly sworn, says:

2. I am over the age of 18 and have personal knowledge of the facts set herein.

3. In 2006, I was arrested and federally charged with offenses relating to cultivation of cannabis.

4. I was represented by a Federal Public Defender.

5. My lawyer knew that I was not a citizen of the United States of America.

6. My lawyer always spoke to me as if a trial was not an option, however I had a valid defense. The search was illegal because I did not voluntarily consent to the search leading to the cannabis. I was already in custody and had been transported to the location by force. The officers broke down a door to a room that I did not have a key for and found cannabis plants.

7. Because I was unfamiliar with the justice system, I followed my lawyers advice and did not insist on going to trial or on trying to suppress evidence.

8. Based on my lawyers advice, I pled guilty.

1

9. My lawyer did not tell me that pleading guilty to the charges would lead to my certain and inevitable deportation.

10. My lawyer led me to believe that because I am Cuban, I would not suffer immigration consequences.

11. The case closed and I served my sentence.

12. I travelled to Cuba and returned without a problem with immigration.

13. I then travelled to the Dominican Republic. When I returned from the Dominican Republic, immigration at the airport took my residency card away from me and told me that I would be placed in deportation proceedings because of this conviction.

14. Based solely upon this conviction, I will be ordered deported and placed on an Order of Supervision. The Order of Supervision will require me to report to immigration regularly until the day comes that relations with Cuba change and the United States can deport me physically.

15. Had I known that I would be deported as a result of this conviction, I would have gone to trial. To me, it is far better to take the risk of going to trial than to accept an automatic deportation to Cuba.

16. I am married to a legal permanent resident and I have an American child who is only one year old.

17. I have worked very hard in this Country and have paid taxes.

18. But for this conviction, I would not be deported and I would be able to obtain citizenship.

19. Under penalty of perjury I attest that the above is true. Further affiant sayeth naught.

_____
MAIKEN AGUILA

Sworn and subscribed before me by MAIKEN AGUILA this 28 day of October, 2011.

_____
NOTARY PUBLIC, STATE OF FLORIDA

Sonnia Rodriguez
NAME OF NOTARY

Notary Public State of Florida
Sonnia Rodriguez
My Commission EE115926
Expires 08/19/2015

3